```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MARYLAND
                                   :
UNITED STATES OF AMERICA
                                   :
    v.                             :    Criminal No. DKC 11-0501
                                   :
ANDREW LIANG
                                   :
```

**MEMORANDUM OPINION AND ORDER**

Andrew Liang was first released to supervision on January 4, 2013, after serving a sentence of one year and one day for possession of child pornography.  The initial conditions included prohibition on computer access except with authorization, or in connection with authorized employment.  ECF No. 48.  As part of his required participation in sex offender treatment, he agreed not to possess or use any computer without permission of the probation officer.  ECF No. 51.  As part of a request to authorize travel, the probation office reported to the court on August 11, 2014, that polygraph testing on July 30, 2014, indicated that Mr. Liang was being truthful.  ECF No. 52.

In April 2015, a petition on supervised release was filed, alleging that admissions during a pre-test polygraph interview violated the condition that he satisfactorily participate in a sex offender treatment program, that he was untruthful with the probation officer concerning unauthorized computers, and that he possessed an unauthorized MacBook.  ECF No. 53.  A supplemental petition was filed in July alleging unauthorized travel outside

Maryland.  ECF No. 61.  After a hearing on August 5, 2015, Mr. Liang's supervised release was revoked and he was sentenced to serve one day in the Marshal's lockup, followed by supervised release for 5 years, less one day.  The special conditions of supervision were adjusted, and included 9 months of home detention.  The violations found were failure to report conduct to the therapist, being untruthful with the probation officer, possession of unauthorized devices, and travel outside Maryland without permission.  ECF No. 64.

Beginning in October 2015, another series of petitions were filed, ECF Nos. 66, 67, and 68, which included allegations of unauthorized devices, the viewing of pornography, contact with minors, and home detention curfew violations.  Mr. Liang admitted the violations in December, and, after a hearing in March 2016, supervision was again revoked and Mr. Liang was sentenced to 30 days in custody, followed by supervised release of 5 years less 31 days.  ECF No. 75.

In August 2016, another petition was filed, alleging access to or possession of unauthorized internet capable devices and failure to update sex offender registration.  ECF No. 79.  A supplemental petition followed in December 2016, alleging failure to report for polygraph testing, admitting to using unmonitored devices to access child pornography, purchasing devices without permission, being dishonest with his therapist and admitting to viewing pornography, and being charged with failure to register as a sex offender.  ECF

No. 86. Those petitions remain pending. The probation officer has also presented to the court a further supplemental petition which would allege violations consisting of voluntary admissions of conducting searches for child pornography, and unapproved contact with children.

On December 19, 2016, Mr. Liang filed a motion for an order that he not be required to submit to any further polygraph examinations until further order of court. ECF No. 90. Because of ongoing discussions among counsel and the probation officer, no response was filed to the motion and no hearing was held. Ultimately the parties did not resolve their differences, and Mr. Liang filed a motion to dismiss the pending petitions and the government responded. A hearing was held February 23, 2017. The court declined to dismiss the petitions in their entirety, but took under advisement whether any of the specific allegations were subject to dismissal. A further hearing is set for March 27, 2017.

The motion to dismiss recounts Mr. Liang's recollection of events in November 2016 surrounding a polygraph examination and group treatment. He asserts that any statements he made during the polygraph examination qualify for Fifth Amendment protection.

The Fifth Amendment protects an individual from being compelled to incriminate himself by permitting him to refuse to answer questions put to him by officials of government. The protection applies to people on supervised release. Under the Fifth Amendment, a person may refuse to answer any question until

3

he is protected at least against the use of the compelled responses in any subsequent criminal case.

A person must, however, claim protection of the privilege. Otherwise, responses to questions are not deemed to be compelled.

> Thus it is that a witness confronted with questions that the government should reasonably expect to elicit incriminating evidence ordinarily must assert the privilege rather than answer if he desires not to incriminate himself. If he asserts the privilege, he "may not be required to answer a question if there is some rational basis for believing that it will incriminate him, at least without *at that time* being assured that neither it nor its fruits may be used against him" in a subsequent criminal proceeding. *Maness v. Meyers*, 419 U.S. 449, 473, 95 S.Ct. 584, 598, 42 L.Ed.2d 574 (1976) (WHITE, J., concurring in the result) (emphasis in original). But if he chooses to answer, his choice is considered to be voluntary since he was free to claim the privilege and would suffer no penalty as the result of his decision to do so.

*Minnesota v. Murphy*, 465 U.S. 420, 429 (1984).

Mr. Liang did not invoke his Fifth Amendment protection, but instead seeks to put his situation into an exception[1]:

> The general rule that the privilege must be claimed when self-incrimination is threatened has . . . been deemed inapplicable in cases where the assertion of the privilege is penalized so as to "foreclos[e] a free

---

[1] Mr. Liang also invokes the line of cases dealing with polygraphs. While he acknowledges that polygraphs are a permissible condition of supervised release, he contends that they can only be used in furtherance of treatment, and not to gather evidence to inculpate or exculpate, citing *United States v. Dotson*, 324 F.3d 256, 260 (4th Cir. 2003). *Dotson* was cited with approval recently by the Fourth Circuit in *United States v. Douglas*, No. 16-4615, 2017 WL 937496, at *2 (4th Cir. Mar. 9, 2017). The polygraphs here were part of treatment.

> choice to remain silent, and ... compe[l] ... incriminating testimony." *Garner v. United States*, 424 U.S., at 661, 96 S.Ct., at 1186. Because revocation of his probation was threatened if he was untruthful with his probation officer, Murphy argues that he was compelled to make incriminating disclosures instead of claiming the privilege. Although this contention is not without force, we find it unpersuasive on close examination.

*Id.* at 434. As the Court further explained:

> The threat of punishment for reliance on the privilege distinguishes cases of this sort from the ordinary case in which a witness is merely required to appear and give testimony. A state may require a probationer to appear and discuss matters that affect his probationary status; such a requirement, without more, does not give rise to a self-executing privilege. The result may be different if the questions put to the probationer, however relevant to his probationary status, call for answers that would incriminate him in a pending or later criminal prosecution. There is thus a substantial basis in our cases for concluding that if the state, either expressly or by implication, asserts that invocation of the privilege would lead to revocation of probation, it would have created the classic penalty situation, the failure to assert the privilege would be excused, and the probationer's answers would be deemed compelled and inadmissible in a criminal prosecution.
>
> Even so we must inquire whether Murphy's probation conditions merely required him to appear and give testimony about matters relevant to his probationary status or whether they went farther and required him to choose between making incriminating statements and jeopardizing his conditional liberty by remaining silent. Because we conclude that Minnesota did not attempt to take the extra, impermissible step, we hold that Murphy's Fifth Amendment privilege was not self-executing.

*Id.* at 435-36 (footnote omitted).  Thus, as a general matter, nothing in the supervised release conditions or requirements violated Mr. Liang's 5th Amendment rights.  Instead, this case is much like *United States v. Lara*, No. 1:14CR00027, 2015 WL 5097182, at *5 (W.D.Va. 2015), *aff'd*, No. 15-4767, 2017 WL 991700 (4th Cir. Mar. 24, 2017):

> Although the Fifth Amendment privilege protects the defendant against being compelled to provide incriminating information that may be used against him in a future prosecution, its provisions are generally not self-executing and the defendant must claim the privilege to invoke it.  *United States v. Ramos*, 685 F.3d 120, 12627 (2d Cir. 2012) (*citing Minnesota v. Murphy*, 465 U.S. 420, 426 (1984)).  It is undisputed that Lara did not invoke his Fifth Amendment privilege in connection with his state probation and the requirement that he participate in the SOTP.
>
> Lara's statements were clearly voluntary in the normal sense.  Nevertheless, there are the "so-called 'penalty' cases, where the government compels an individual 'to forgo the Fifth Amendment privilege by threatening to impose economic or other sanctions [] capable of forcing ... self-incrimination.'" *Ramos*, 685 F.3d at 127 (*quoting Murphy*, 465 U.S. at 434))[(internal quotation marks omitted)].  Lara's situation is not a penalty case, however, because he was not informed "that invocation of the privilege would lead to revocation" of probation, in which case he would be deemed to have been compelled to speak. *Ramos*, 685 F.3d at 127.  Rather, Lara's terms of probation required him to be truthful with his probation officer and to successfully complete sex offender therapy, terms that have been upheld as not constituting compelled self-incrimination.  *Id.* (*citing Murphy*, 465 U.S. at 424); *United States v. Lee*, 315 F.3d 206, 212-13 (3d Cir. 2003) (same); *but see United States v. Bahr*, 730 F.3d 963, 966 (9th Cir. 2013) (holding that admission of

> statements at sentencing obtained through court-ordered SOTP that required disclosure of past criminal sexual conduct violated self-incrimination privilege).

In *Lara*, the Fourth Circuit distinguished *United States v. Bahr*, 730 F.3d 963 (9th Cir. 2013), noting that Lara, like Mr. Liang, could have chosen not to provide incriminating information. *United States v. Von Behren*, 822 F.3d 1139 (10th Cir. 2016), is distinguishable on similar grounds.

For the foregoing reasons, as well as those stated at the hearing, Defendant's motion to dismiss IS DENIED.

March 21, 2017                                /s/
                                       DEBORAH K. CHASANOW
                                       United States District Judge

7